IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| STARR WATSON, | CASE NO. 4:25-cv-287 |
| Plaintiff, | DISTRICT JUDGE DONALD C. NUGENT |
| vs. |  |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Starr Watson filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural background**

In April 2022, Watson filed an application for supplemental security income alleging a disability onset date of January 1, 2016.[1] Tr. 163–70. In

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

pertinent part, Watson claimed that she was disabled and limited in her ability to work due to major depressive disorder, anxiety disorder, borderline personality disorder, glaucoma, needs oxygen, lupus syndrome, Chiari malformation, arthritis, and blood clots. Tr. 190. The Commissioner denied Watson's application initially and on reconsideration. Tr. 84, 97.

In December 2022, Watson requested a hearing. Tr. 101. In August 2023, Administrative Law Judge ("ALJ") Brian Crockett held a telephonic hearing. Tr. 46–60. Watson appeared, testified, and was represented by counsel at the August 2023 hearing. Tr. 51. Qualified vocational expert Andrew Beale also testified. Tr. 57. In September 2023, the ALJ issued a written decision finding that Watson was not entitled to benefits. Tr. 18–35.

In September 2023, Watson appealed the ALJ's decision to the Appeals Council. Tr. 159. In October 2024, the Appeals Counsel denied Watson's appeal, making the ALJ's September 2023 decision the final decision of the Commissioner. Tr. 12; *see* 20 C.F.R. § 404.981.

Watson timely filed this action in February 2025.[2] Doc. 1. In it, she asserts the following two assignments of error:

> I.    THE RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE IT

---

[2]    The Appeals Council granted Watson an extension of time to file this action. Tr. 2. The time to file a complaint may be extended under certain circumstances. *See* 42 U.S.C. § 405(g). The Appeals Council may permit the claimant more time to file a complaint if the claimant shows good cause for missing the deadline. *See* 20 C.F.R. §§ 404.911, 404.982.

IS BASED ON THE ALJ'S OWN LAY OPINION.

II.    THE COMMISSIONER ERRED AS A MATTER OF LAW BY FAILING TO IDENTIFY JOBS AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS THAT EXIST IN SIGNIFICANT NUMBERS IN THE NATIONAL ECONOMY.

Doc. 10, at 2.

**Evidence**[3]

*1.  Personal, Vocational, Educational Evidence*

Watson was born in 1977 making her 45 years old on the date of her application and 46 years old on the date the ALJ issued his decision. Tr. 163. She obtained a high school education and had no full-time employment history. Tr. 191.

---

[3]    The evidence cited is generally limited to the evidence cited in the parties' briefs.

*Medical Evidence*[4]

In July and October 2022, Ashlee Edwards, Watson's psychotherapist, noted that Watson showed signs of anxiety and depression. *See* Tr. 809, 817. In October 2022, Counselor Edwards also remarked that Watson's thought content was depressed and that she was easily distracted. Tr. 817–18.

At various psychotherapy and mental health management appointments between 2022 and 2023, Watson presented with mild to moderate depression and a stressed, tired, or sad mood. *See* Tr. 534, 779, 782, 806, 817, 1023, 1114, 1121, 1135, 1147. Also throughout this time period, Watson's mental health providers noted that her insight and judgment ranged from poor to fair. *See* Tr. 786, 791, 796, 801, 806, 818, 1061, 1068–69, 1083, 1092, 1114, 1121, 1129, 1135, 1147.

---

[4]     The evidence cited in this subsection is limited to what Watson cites in the Argument section of her opening brief, which is the only place where she cites relevant evidence. Watson does not provide any summary of the medical evidence in a subsection titled "Relevant Evidence." *See* Doc. 10, at 3. Instead, she provides only excerpts from portions of the ALJ's decision—which she is presently challenging—and states that "[a]n additional statement of facts may be provided upon request from the Court." *See* Doc. 10, at 3. But the Court has already made such a "request." Indeed, it ordered that "[a]ll facts relevant to the legal issues and discussion must be set forth in the Facts section." Doc. 7, at 3. Watson chose to ignore this direction thereby contravening the Court's earlier Order establishing the briefing requirements and risking the possibility that the Court would disregard evidence that she failed to cite in the facts section of her brief. Based on the Court's Order, all of the evidence cited in Watson's arguments that was not provided in the facts section could be disregarded, leaving her arguments unsupported and, thus, forfeited. *Id*. at 3–4 ("The Court will not consider facts referenced in a party's argument unless those facts have been set out in the *Facts* section of the party's brief.").

*2. Opinion Evidence*

In July 2022, state agency psychological consultant Bruce Lipetz, Psy.D., found that:

> The claimant appears to be with a broad range of functioning and no severe limitation, as was opined in the prior decision. Her allegations are noted but she has no evidence of any sustained severe limitation. Her allegations of severe limitations due to her mental conditions are not well supported and based on the evidence in file, no severe impairment is shown to be present.

Tr. 66.[5] Dr. Lipetz thus found no mental RFC limitations. Tr. 69.

In September 2022, Mara Craig, PA-C, completed a check-the-box Mental Capacity Assessment form in which she assessed that Watson had some degree of limitation in all areas of mental functioning, including extreme limitations in all aspects of interacting with others. Tr. 736–39.

In November 2022, David Dietz, Ph.D., affirmed the initial determination. Tr. 77–78. He further noted that "[t]he recent opinions offered by Mara Craig from insight are not given weight as the source has not provided any records or descriptions to support their ratings, further the ratings are not consistent with the other MER." Tr. 78.

---

[5]     As referenced in Dr. Lipetz's opinion, Watson had a prior application, which was denied initially and on reconsideration in 2020. *See* Tr. 66.

### 3. *Hearing Testimony*[6]

Andrew Beale, Ed.D., testified at the ALJ hearing as a vocational expert Tr. 56–59. In response to the ALJ's hypothetical about whether an individual of the same age, education, and work history as Watson with the same RFC that the ALJ ultimately adopted could perform any work existing in the national economy, Beale found that such an individual could perform unskilled, sedentary work. Tr. 57–8. Specifically, he explained that the hypothetical individual could perform:

> [w]ork, for example as an examiner, someone who inspect materials for defects.
> …
> Or there would be work as a document clerk, someone who scans documents or mail.
> …
> Or a third example would be work as a folder, someone who might work in the garment industry folding garments.

Tr. 58.

### ALJ Decision

The ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant has not engaged in substantial gainful activity since April 25, 2022, the application date (20 CFR 416.971 et seq.).
>
> 2.    The claimant has the following severe impairments: Chiari malformation; anxiety; depression; deep vein thrombosis (DVT); bronchial asthma; morbid obesity; exertional dyspnea; status-

---

[6]    Because neither party summarized, nor relied on, Watson's hearing testimony, the Court has omitted discussion of that evidence.

post bilateral carpal tunnel releases; and lumbar degenerative disc disease 20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except this individual is able to perform all postural movement/positions occasionally, but she should never climb ladders, ropes, or scaffolds. She is able to perform frequent handling and fingering with the bilateral upper extremities. This individual is able to tolerate occasional exposure to extreme cold, extreme heat, humidity, pulmonary irritant, such as fumes, odors, dust, and gases, as well as hazards such as unprotected heights, uneven surfaces or heavy machinery with unshielded moving mechanical parts. This individual is able to understand, remember, and/or carry out detailed but not complex instructions and deal with occasional changes in a routine wok setting. However, this individual cannot perform work requiring a special production rate such as assembly line work or work that require hourly quotas. Finally, this individual can have only minimal contact with the public and or more than occasional interaction with coworkers and supervisors once the job is learned and the duties are assigned.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on January 18, 1977 and was 45 years old, which is defined as a younger

7

individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.     The claimant has at least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since April 25, 2022, the date the application was filed (20 CFR 416.920(g)).

Tr. 23–35.

## Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.     Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.     Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.     Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.     What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.     Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 103 (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v.*

10

*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

1.   *The ALJ appropriately considered the medical evidence, and his decision is supported by substantial evidence.*

Watson first argues that the ALJ based his RFC determination "solely on his own lay interpretation of the raw medical data and diagnosis." *See* Doc. 10, at 10. To this end, she asserts that because there were "no medical opinions from the state agency psychological consultants" and that the ALJ "rejected the only medical opinion of record," the ALJ had a duty to develop the record. *See* Doc. 10, at 13. In her reply brief, Watson clarifies that "the error arises in rejecting the sole medical opinion of functional limitations of record and instead formulating an RFC assessment based on the ALJ's own lay interpretation of the 'raw medical data.'" Doc. 14, at 0[7] (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 911–13 (N.D. Ohio 2008)).

There are several problems with Watson's argument. For starters, although she hints that the ALJ erred by basing his RFC assessment "on his own lay interpretation of the raw medical data and diagnosis," Doc. 10, at 10, *see id.* at 14, she cites nothing to support this bald assertion. Indeed, the ALJ's decision belies her assertion. *See* Tr. 25–33.

---

[7]   This documents page numbering begins at zero.

Additionally, while an ALJ must ensure that every claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022); 20 C.F.R. § 404.1512(a)). Although social security proceedings are inquisitorial rather than adversarial, that fact doesn't mean that the ALJ advocates for the claimant. *See Moats*, 42 F.4th at 563 ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate.") (citing *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality opinion). The Sixth Circuit has thus instructed that it is only under "extreme circumstances" that an ALJ could be said to have a "special duty" to help develop the record. *See Moats*, 42 F.4th at 563–64 (discussing *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983)).

In support of her argument, Watson largely relies on *Deskin*, a case from this district. *See* 605 F. Supp. 2d at 911. There the district court explained that:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfil the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about the functional capacity."

*Id.* at 912. As Watson recognizes, "the Sixth Circuit has not commented on *Deskin*[.]" Doc. 10, at 9 (citation omitted). Moreover, *Deskin*, which isn't controlling, has received mixed reviews. *See*, *e.g.*, *Henderson v. Comm'r of Soc. Sec.*, No. 08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) ("The Court finds, however, that *Deskin* ... is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals."); *see also Carr v. Comm'r of Soc. Sec.*, No. 5:23-cv-87, 2024 WL 1556398, at *11 (N.D. Ohio Jan. 8, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 1343473 (N.D. Ohio Mar. 30, 2024); *Fox v. Comm'r of Soc. Sec.*, No. 23-cv-580, 2023 WL 7018362, at *7–9 (N.D. Ohio Oct. 10, 2023), *report and recommendation adopted*, 2023 WL 7222824 (N.D. Ohio Nov. 2, 2023).

Further, Watson could not prevail even under *Deskin*. Here, the concern identified by the *Deskin* court does not apply and the ALJ did not have a duty to develop the record. The court in *Deskin* was concerned that "[t]he extensive MRI findings and substantial degrative disc disease throughout Deskin's spine provide objective medical evidence that compels the need for the opinion of a medical source to insist in the translation of the raw medical data here into functional limitations." *Deskin*, 605 F. Supp. 2d at 913. Watson does not point to any specific mental-health diagnostic evidence that the ALJ might have improperly interpreted when assessing her RFC. Instead she cites generally to mental status exam findings and argues that in her case the ALJ could not

13

"permissibly make a commonsense judgment about the RFC." *See* Doc. 10, at 12–14. Watson's argument is thus that, since the ALJ found the opinion evidence of record to be unpersuasive in light of the other medical evidence, *Deskin* required the ALJ to develop the record by ordering a separate medical opinion. Doc. 10, at 14. But *Deskin*, even if it were good law, does not provide such a mandate.

Importantly, there was a medical opinion from an examining source. *See* Tr. 736–39. The fact that the ALJ deemed the opinion unpersuasive does not mean it did not exist or that the ALJ reached an RFC determination based only on lay interpretation of raw medical data. And, more importantly, Craig's check-the-box opinion was not the only evidence of record. Although Watson claims that there were no opinions from the state agency psychological consultants, Doc. 10, at 14, she is mistaken. The record contains findings from both state psychological consultants, who both found that the record did not support any mental functional limitations. *See* Tr. 66, 69, 78.

Under governing Sixth Circuit precedent, the burden is on Watson to show that "extreme circumstances" existed that would impose a "special duty" on the ALJ to develop the record. *Moats*, 42 F.4th at 563. Watson has not met this high burden. Indeed, Watson ignores *Moats*, which is controlling and instead cites *Deskin* and cases like *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). *Moats*, however, relegated the duties discussed in *Lashley* to only "extreme" situations. *Moats*, 42 F.4th at 563–64 (discussing

14

*Lashley*, 708 F.2d at 1051). And the "extreme" situation in *Lashley* that would have required the ALJ to develop the record was that the claimant wasn't represented by counsel and only had a fifth-grade education. 708 F.2d at 150–52. Further, a series of strokes left Lashley unable to articulate his thoughts and impaired his ability to read. *Id.*

Importantly, given that she ignores *Moats*, Watson does not argue that hers is an "extreme" situation. Instead, Watson simply cites certain observations of her conditions, as reported in medical records, and urges this Court to find that "the present case is not one where the ALJ can permissibly make a commonsense judgment about the RFC." Doc. 10, at 13–14. Notably, the evidence Watson cites in support of her position only demonstrates that hers is not an *extreme* situation. For instance, Watson points to her presentation with mild to moderate psychological symptoms, "signs of anxiety and severe depression" and "poor to fair insight and judgment." *Id.* at 13. These symptoms are not so *extreme* in nature to impose a duty to develop the record and Watson points to no case in which, under similar facts, a Court found that remand was necessary on that basis.

Finally, Watson was represented by counsel at the hearing. Her attorney did not request or otherwise advocate for any further development of the record. *See* Tr. 49. In fact, Watson's attorney conceded that there were no outstanding records or objections to what was in the file. *Id.*; *see also Owens v. Berryhill*, No. 18-cv-1043, 2019 WL 2465229, at *13 (N.D. Ohio Feb. 13, 2019)

15

(finding that the ALJ's RFC was supported by substantial evidence and that, "[m]oreover, Owens, who was represented by counsel at the hearing, did not request a consultative examination or otherwise suggest the medical record was insufficient for the ALJ to make a disability determination"), *report and recommendation adopted*, 2019 WL 1929695 (N.D. Ohio Apr. 30, 2019).

In sum, Watson has not shown that the ALJ had a duty to develop the record or that the ALJ erred in his consideration of the evidence.

2.     *The ALJ appropriately found at Step 5 in the sequential evaluation that jobs exist in significant numbers in the national economy.*

At Step 5, the ALJ considers the claimant's RFC in combination with the claimants "age, education, and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v), (g)(1). "Any other work (jobs) that [a claimant] can adjust to must exist in significant numbers in the national economy (either in the region where[a claimant] lives or in several regions in the country)." 20 C.F.R. 416.960(c)(1); 404.1560(c)(1). To support a finding that a claimant is not disabled at Step 5, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors." 20 C.F.R. 416.960(c)(2); 404.1560(c)(2).

Here, the ALJ agreed with the vocational expert's testimony that three different jobs were available in significant numbers, based on Watson's RFC: (1) examiner (DOT # 979.687–026), (2) document clerk (DOT # 249.587–018);

and (3) folder (DOT # 685.687-014). *See* Tr. 34. The ALJ found that "[b]ased on the testimony of the vocational expert … considering [Watson's] age, education, work experience, and residual functional capacity, [Watson] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*.

As a precursor to her broader argument that ALJ erred by finding jobs existed in significant numbers, Watson asks the Court to find that the job of document preparer, or "document clerk" as the ALJ referred to that occupation, Tr. 34, is obsolete. *See* Doc. 10, at 18. But, as the Commissioner notes, Watson failed to raise this issue before the agency. Doc. 13, at 14. Indeed, when given the chance, her counsel declined to ask any questions of the vocational expert. *See* Tr. 59. And her counsel omitted any mention of this issue during counsel's closing argument. *See id*. So Watson has not preserved this issue for review. *See Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 545 (6th Cir. 2020); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) ("It is axiomatic that 'a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal.'") (citation omitted)

Further, Watson does not cite any decision in this Circuit that has found this occupation obsolete. *See* Doc. 10, at 18–19 (citing one Ninth Circuit case and district court cases from outside of the Sixth Circuit). The Court should, thus, decline Watson's invitation to find the occupation of document clerk obsolete.

Putting aside Watson's unpreserved argument, Watson's claim boils down to an argument that substantial evidence does not support the ALJ's decision "that, considering [Watson's] age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 34. Neither Congress, the Commissioner, nor the courts have defined the term "significant" in the context of Social Security job numbers. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Rather, the ALJ makes this determination on a case-by-case basis. *Id*. (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Courts review for substantial evidence the ALJ's significant-number finding by determining whether it "fits comfortably within what this court and others have deemed 'significant.'" *Id*. (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (concluding that 6,000 jobs was a significant number based on the job numbers in other cases in the Sixth Circuit and in other circuits)); *see also Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 546 (6th Cir. 2025) (affirming that there is no bright line rule for determining what constitutes a "significant number" and holding that courts must inquire on a case by case basis into what constitutes a significant number of jobs).

The ALJ found that 58,000 jobs amounted to a significant number.[8] Doc. 9, at 34. Watson does not point to any case in this district that found that 58,000 jobs could not be considered significant.[9] Instead, she argues that the ALJ failed to consider certain factors, identified by the Sixth Circuit. Doc. 10, at 20. Specifically, Watson highlights the following:

> As the Sixth Circuit in <u>Hall</u> noted, several factors should be considered when determining whether significant numbers exist. <u>Hall</u>, 837 F.2d at 275. The listed factors were:
>
>> [t]he level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.
>
> <u>Id</u>. At no point in the decision did the ALJ address any of these factors. (Tr. 27-34).

Doc. 10, at 19.

---

[8]     This figure is comprised of 16,000 examiner jobs, 29,000 document preparer jobs, and 13,000 folder jobs. Doc. 9, at 34.

[9]     For that matter, she points to no case in this district that found that 29,000 jobs was not significant. Nor could she. *See*, *e.g.*, *Taskila*, 819 F.3d at 905 (6,000 jobs).

Based on Watson's briefing, it is unclear whether she is arguing that 29,000 jobs should not be considered significant, or whether she is arguing that the ALJ improperly assessed whether significant numbers existed. But both arguments are unavailing.

First, if Watson is arguing that, as a general matter, 29,000 jobs should not be considered significant, that argument fails. As an initial matter, she hasn't shown that the number that the ALJ found should be cut in half. Further, courts in Circuit have found that significant numbers exist in cases where notably less than 29,000 jobs were found available in the national economy. *See Norris*, 139 F.4th at 546 (18,800 jobs); *Taskila,* 819 F.3d at 905 (6th Cir. 2016) (6,000 jobs); *Nejat*, 359 F. App'x at 579 (2,000 jobs).

Second, if Watson is arguing that the ALJ improperly considered, or failed to consider, the factors outlined in *Hall*, that argument fails. For starters, the factors listed in *Hall* "[a]re suggestions only—the ALJ need not explicitly consider each factor." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). And beyond Watson's citation to factors the ALJ *should* consider, she does not cite any case or regulation that *required* the ALJ to consider certain factors.

Watson's argument surrounding *Hall* ultimately amounts to a dispute over whether the ALJ's decision is supported by substantial evidence. It is. The ALJ explicitly stated that his finding was based on the testimony of the vocational expert. Tr. 34. A vocational expert's testimony in response to a

hypothetical can provide substantial evidence, so long as the hypothetical accurately represents the claimant's condition. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Moreover, as the Commissioner highlights, the ALJ did consider many of the factors outlined in *Hall* when he evaluated the entirety of the record. *See* Doc. 13, at 12–13.

Further, Watson fails to show that the ALJ's decision, that 58,000 jobs existed nationally, and that 58,000 jobs constituted significant number of jobs, was unreasonable. As stated, the ALJ's decision is supported by substantial evidence because the ALJ explicitly based her finding, in addition to other bases, on the testimony of the vocational expert. *See Pasco,* 137 F. App'x at 845. Indeed, the ALJ specifically stated that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 34. Watson makes no argument that the vocational expert's testimony was based on an inaccurate hypothetical or otherwise does not constitute substantial evidence. Because the ALJ based her determination that a significant number of jobs exist on the unchallenged testimony of the vocational expert, the ALJ's decision was supported by substantial evidence.

Watson's second issue should, thus, also be rejected.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: August 27, 2025

                                      */s/ James E. Grimes Jr.*
                                        James E. Grimes Jr.
                                        U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).